**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARA S.,** | ) | |
| **on behalf of her minor child, C.S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 19-cv-8015** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Mara S., on behalf of her minor child C.S. ("Claimant"), brings this motion for summary remand to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying Claimant's eligibility for Supplemental Security Income ("SSI") benefits. The Commissioner brings a cross-motion seeking to uphold the prior decision. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons stated below, plaintiff's motion for summary remand, (Dckt. #21), is denied and the Commissioner's motion for summary judgment, (Dckt. #22), is granted.

## I. BACKGROUND

### A. Procedural History

On July 5, 2011, plaintiff Mara S. filed an application for SSI on behalf of her minor child, C.S., who was then three years old. The application alleged disability dating back to July

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to the plaintiff only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1, 2008, due primarily to scoliosis. (R. 20). The claim was denied initially and upon reconsideration. Plaintiff filed a timely request for a hearing, which was held on October 17, 2012, before an Administrative Law Judge ("ALJ"). (R. 37-56). On November 5, 2012, the ALJ issued a written decision denying Claimant's application for benefits. (R. 17-36). The Appeals Council denied review on March 19, 2014, and plaintiff appealed to the U.S. District Court for the Northern District of Illinois. On March 15, 2016, the District Court ordered that the case be remanded for further proceedings. On May 13, 2016, the Appeals Council vacated the decision of the Commissioner and remanded the case to ALJ Edward P. Studzinski. (R. 1040-43).[2]

A second hearing was held on August 12, 2016, when Claimant was eight years old. (R. 940-73). The ALJ issued a written decision on January 9, 2017, again denying Claimant's application for benefits. (R. 886-913). The Appeals Council denied review on June 19, 2017, leaving the decision of ALJ Studzinski as the final decision of the Commissioner. (R. 870-76). This action followed.

### B.     The Social Security Administration Standard to Recover Benefits

Disabled children are entitled to benefits from the Social Security Administration, *see* 42 U.S.C. §1382c(a)(3)(C), but the determination of disability follows a different model then that used for adult applicants. *See McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021). The SSA employs a three-step analysis to decide whether a child is disabled. 20 C.F.R. §416.924. First, the ALJ considers whether the child is engaged in any substantial gainful activity. If he is, his claim is denied. At step two, the ALJ considers whether the child has a medically severe impairment or combination of impairments. If he does not, his claim is denied. *Id.* Finally, the

---

[2] While the District Court case was pending, plaintiff filed a second claim on Claimant's behalf on May 6, 2014. (R. 1006-11). In its order remanding the case, the Appeals Council directed that the two claims be consolidated. (R. 1042).

ALJ considers whether the child's medically determinable impairments meet or functionally equal the criteria of a listing. To find an impairment functionally equivalent to one in the listings, the ALJ must analyze the impairment's severity in six age-appropriate domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b). If the ALJ finds that the child has a "marked" limitation in two of the domains or an "extreme" limitation in one, the child functionally equals a listing and is considered disabled. 20 C.F.R. §416.926a(d).

### C.    The Evidence Presented to the ALJ

Claimant alleges disability primarily due to limitations stemming from scoliosis and speech and language impairments. In her motion for summary remand, plaintiff focuses on two domains (namely, interacting and relating with others, and moving about and manipulating objects) and asserts that the ALJ erred by not finding that C.S. had a "marked" limitation with respect to both. (Dckt. #21 at 8-12).[3] Accordingly, the following evidence consists only of excerpts pertaining to these two domains.

### 1.    Medical Records Related to Claimant's Scoliosis

Claimant was born on March 30, 2008. When he was thirteen months old, he began treatment at Children's Memorial Hospital for infantile scoliosis and torticollis. (R. 238). Claimant was subsequently diagnosed with a tethered spinal cord, and, on August 14, 2009, he underwent surgery for a tethered spinal cord release. (R. 317-19). Despite the surgery,

---

[3] As the Commissioner points out, plaintiff also devoted a portion of her brief toward a third domain (namely, health and physical well-being). (Dckt. #21 at 12-13). However, because the ALJ found that C.S. had a "marked" limitation with respect to this domain, (R. 905), and plaintiff does not argue that C.S.'s limitation regarding this domain is "extreme," (Dckt. #21 at 12-13), any alleged error with respect to how the ALJ explained his finding cannot support remand because it is immaterial and harmless.

Claimant's doctors determined that his scoliosis was progressively worsening and recommended brace treatment. (R. 430). In May of 2010, Claimant was fitted with a low-profile thoraco-lumbar-sacral brace and was directed to wear it twenty-three hours per day. (R. 437, 445). Eight months later, in January of 2011, Claimant was fitted with a high-profile brace. (R. 520).

On October 31, 2011, Claimant's physical limitations were evaluated in connection with his initial individualized education program ("IEP"). (R. 691). Physical therapist Sarah Mooberry noted that Claimant's brace limited his ability to bend at the waist, limited his range of motion, and made it difficult for him to go up and down stairs. (R. 690-91). She added that, despite these limitations, Claimant found "ways to work around" the brace. (R. 691). He could sit in a regular classroom chair, transition up from the floor through one half kneeling, skip with a left leg lead, jump forward consecutively, and use the restroom on his own (although he needed help taking down and pulling up his pants). (R. 686, 691). Claimant's lower extremity range of motion was within normal limits, as was his muscle tone. Mooberry concluded that Claimant had "generally functional skills for the school setting," but would benefit from educationally relevant physical therapy. (R. 686).

During a physical therapy review on April 3, 2013, Sarah Domin, MPT, found that, due to Claimant's "functional independence in accessing all areas of his educational environment," he no longer qualified for educationally relevant physical therapy. (R. 1195).

On October 27, 2014, a treating physician noted that Claimant was no longer wearing his brace as he had outgrown it. (R. 1199). Treatment notes from a January 21, 2016 check-up indicate that Claimant had lost his insurance and had not been seen by any orthopedic or neurosurgery providers in more than a year. (R. 1611-12). The doctor noted that Claimant had

4

not worn his brace, which no longer fit, for more than six months.  (R. 1612).  A new brace was

ordered, which Claimant was instructed to wear sixteen to twenty hours per day.  (*Id.*).

### 2.    Medical Records Related to Claimant's Speech and Language Impairments

In addition to his spine-related impairments, Claimant – who speaks both English and

Spanish – also struggles with speech and language.  (R. 687-90, 693).  Claimant's speech was

initially evaluated at ICG Rehab Services on January 20, 2010, when Claimant was one year and

nine months old.  At that time, he "demonstrated low average receptive and expressive language

development," with a nineteen percent expressive delay and a twenty-nine percent receptive

delay.  (R. 710-11).  Claimant was re-assessed in July of 2010.  (R. 710).  Treatment notes

indicate that he showed progress, presenting with a fifteen percent expressive delay and a

nineteen percent receptive delay.  (R. 711).  No therapy was recommended.  (R. 710).

On February 7, 2011, Claimant – then two years and ten months old – was reassessed by

Speech Language Pathologist ("SLP") Evanne M. Hoolsema, Ph.D., at ICG Rehab Services.  (R.

710-12).  She found that Claimant demonstrated normally developing receptive and expressive

language skills with a nine percent expressive delay and no receptive delay.  (R. 711).  Dr.

Hoolsema noted that Claimant could express his needs effectively with words and that, although

his speech was not perfectly clear, his mom could understand most of what he said.  (*Id.*).  No

areas of concern were noted.  (R. 712).

As noted above, Claimant was evaluated in connection with his first IEP on October 31,

2011, when he was three years and seven months old.  (R. 691).  At that time, SLP Heidi Valerio

found that Claimant's receptive and expressive language skills were in the moderately low range

in Spanish (with English support).  He demonstrated only fifty percent intelligibility in single

words in both Spanish and English, (R. 687), and his total language score was in the third

percentile, within the moderately low range, (R. 688).

The next report regarding Claimant's speech and language abilities in the record is from

more than three years later. During a December 8, 2014 IEP evaluation, SLP Leticia Sotelo

found that Claimant – then six years and eight months old – had receptive language skills in the

average range and expressive language skills in the very low to borderline range. (R. 1198). His

"[o]verall language was in the very low range when only Spanish was used; however, he

increased his scores to borderline when English was used." (*Id.*). Despite these findings, she

also found that he had "made good progress in the areas of speech and language," noting that his

intelligibility had improved to more than seventy percent accuracy, meaning it was easier to

understand what he was saying. (R. 1194-95). Sotelo recommended that Claimant continue

receiving speech and language services for thirty minutes per week. (R. 1195).

Claimant's IEP was reassessed the following year, on December 15, 2015. Claimant

"continue[d] to have challenges in the area of speech and language" which were "impacting his

communication." (R. 1194). The evaluator noted that Claimant would likely have difficulty

meeting expectations in a regular classroom setting and recommended that Claimant be given

"systematic intense and direct instruction . . . to develop phonological, decoding, and

automaticity skills," as well as "ample time to process questions and directives, extended time to

complete assignments, and repetition of directions and instruction." (*Id.*).

### 3. Evaluations from Claimant's Teachers

On October 3, 2011, Claimant's pre-school teacher, Clara Calderon, completed a

questionnaire on Claimant's behalf. (R. 180-87). Regarding Claimant's ability to interact and

relate with others, Calderon – who had spent two and a half hours with Claimant every school

6

day for seven weeks – noted that Claimant had slight problems with seeking attention, expressing anger, asking permission appropriately, following rules, respecting and obeying adults in authority, using language appropriate to the situation and listener, and taking turns in conversation, (R. 183), as well as obvious problems relating experiences and telling stories, using adequate vocabulary and grammar to express thoughts/ideas in general, and engaging in everyday conversation, (*Id.*). Calderon reported neither "serious" nor "very serious" problems in this domain, (R. 183), but noted that she could understand no more than half of what Claimant said when the topic of conversation was known to her and "very little" when the topic of conversation was unknown, (R. 184). With repetition and rephrasing, Calderon could understand Claimant one half to two thirds of the time. (*Id.*) As for moving about and manipulating objects, Calderon found that Claimant exhibited slight problems managing pace of his physical activities or tasks, and serious problems moving his body from one place to another (standing, walking, running, jumping climbing). (*Id.*).

Claimant's first grade teacher, Pedro Ricordez, completed the same questionnaire three and a half years later, on May 28, 2015. At that time, Ricordez observed that Claimant had no problems in interacting and relating with others. (R. 1161). In the section regarding Claimant's ability to move about and manipulate objects, Ricordez found that Claimant exhibited only slight problems in every category. (R. 1162).

### 4. Function Reports

Claimant's mother completed a function report on July 20, 2011, when Claimant was three years and three months old. (R. 154-163). She noted that Claimant could be understood "most of the time" by people who knew him, as well as people who did not. (R. 158). Although Claimant had "trouble understanding words," he could speak clearly. (*Id.*). Claimant's mother

indicated that although he did not ask a lot of questions, use complete sentences, talk about what he was doing, or tell stories, Claimant took part in conversations with other children and asked for the things he wanted.  (R. 158-59).  Claimant could ride a tricycle and wind up a toy, but could not catch a large ball, print letters, write his name, or use scissors.  (R. 161).

Claimant's mother completed a second function report on May 6, 2014, when Claimant was six years and one month old.  She indicated that Claimant had no problems speaking clearly and that his ability to communicate was not limited.  (R. 1139-40).  She also noted that Claimant did not know the days of week, months of year, or how to tell time and count change.  (R. 1141). Claimant could walk, throw a ball, and ride a bike, but could not run, jump rope, use roller skates, or swim.  (R. 1142).

### 5.      Evidence from State Agency Consultants

On August 16, 2011, state agency consultant Lenore Gonzalez, M.D., completed a Childhood Disability Form regarding Claimant's case.  (R. 600-05).  She concluded that he had no limitation in interacting and relating with others, less than marked limitations in moving about and manipulating objects, and marked limitations in the health and physical well-being domain. (R. 602-03).  At the time of Dr. Gonzalez's review, the file did not include evidence regarding Claimant's language and speech impairment.  (R. 659).

State agency SLP Diane Lowry and state agency medical consultant Cosme Cagas, M.D., reviewed Claimant's file on December 14, 2011, and December 22, 2011, respectively.  They found that Claimant had  marked limitations in interacting and relating with others, (R. 656), but less than marked limitations in moving about and manipulating objects and health and physical well-being, (R. 657).

### 6.      Hearing Testimony

Claimant appeared at the August 12, 2016 hearing accompanied by his mother and attorney.  He testified that he cannot sit down when wearing his brace, (R. 971), but that he can do jumping jacks and play games like tag when his brace is off, (R. 966-67).

Claimant's mother corroborated Claimant's statement that he cannot sit in a chair when wearing his brace.  (R. 955).  She also testified that Claimant cannot ride his bike, play sports, or run when his brace is on, (R. 955), and that the brace irritates his skin, (R. 963).  According to his mother, Claimant typically takes the brace off only when he showers and goes to gym class.  (R. 955).  At the time of the hearing, however, Claimant's mother testified that he had not been wearing his brace for six months because he had grown out of it.  (R. 958).  To get a new brace approved by the insurance company, Claimant's mother had to submit a letter of necessity from Claimant's orthopedic specialist.  She testified that because of the long waiting list to see the specialist, she had not been able to secure the letter until the day before the hearing.  (*Id.*).

### D.      The ALJ's Decision

In his January 9, 2017 decision, the ALJ noted that Claimant was a preschooler on July 5, 2011 (the date the application was filed) and was a school-age child at the time of the hearing.  (R. 892).  Then, beginning the three-step analysis, he found that Claimant had not engaged in substantial gainful activity since the application date.  (*Id.*).  At step two, he found that Claimant suffered from the severe impairments of scoliosis and speech delay.  (*Id.*).  At step three, the ALJ concluded that Claimant's medically determinable impairments did not meet or functionally equal the criteria of a listing.  (*Id.*).  Assessing the domains, he found that Claimant had a marked limitation in health and physical well-being and less than marked limitations in every other domain, including interacting and relating with others and moving about and manipulating

objects.  (R. 902).  Accordingly, the ALJ concluded that Claimant had not been disabled, as defined in the Social Security Act, since the date the application was filed.  (R. 906).

## II.     STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court.  Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted).  The Commissioner's decision must also be based on the proper legal criteria and be free from legal error.  *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."  *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).  Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## III.     ANALYSIS

Claimant (through his mother) makes three arguments in support of remand. First, he argues that the ALJ's finding that he had a "less than marked" limitation in interacting and relating with others was unsupported by the record. Second, Claimant argues that the ALJ's finding that he had a "less than marked" limitation in moving about and manipulating objects was similarly unsupported. Third, Claimant argues that the ALJ improperly discounted the subjective complaints of Claimant and his mother.

### A.     The ALJ's finding that Claimant had a less than marked limitation in interacting and relating with others was supported by substantial evidence.

The domain of interacting and relating to others involves:

> considering how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possession of others. 20 C.F.R. §416.929a(i). Interacting and relating to others relates to all aspects of social interaction at home, at school, and in the community.

*Fant ex rel. LeBlanc v. Colvin*, No. CIV.A. 12-3032, 2013 WL 5671326, at *4 (E.D.La. Oct. 9, 2013); *see also Taylor v. Colvin*, No. 15 CV 3176, 2016 WL6774230, at *14 (N.D.Ill. Nov. 14, 2016). Thus, the ALJ must "analyze both the child's ability 'to form and sustain relationships with family members, friends, and others' and the child's 'response to persons in authority, compliance with rules, and regard for the possessions of others.'" *Bianchi v. Colvin*, No. 13 CV 1254, 2015 WL 3962524, at *3 (N.D.Ill. June 29, 2015), *quoting* SSR 09-5p. Moreover, because communication skills are "essential to both interacting and relating," the ALJ must also consider "the speech and language skills children need to speak intelligibly and to understand and use the

11

language of their community," as well as whether the child can "speak clearly enough to be understood" within "age-appropriate expectations." SSR 09-5P, 2009 WL 396026, at *2-3.

As stated above, the ALJ found that Claimant had a less than marked limitation in interacting and relating to others. (R. 899-900). Claimant argues that the ALJ's analysis of his ability to interact and relate with others was insufficient for five reasons. First, Claimant asserts that the ALJ improperly substituted his layman's view of Claimant's abilities for that of an expert and, relatedly, should have sought an updated opinion from a consultant rather than weighing the evidence in the record himself. Claimant also argues that the ALJ improperly relied on evidence of Claimant's improvement, failed to adequately explain his finding that Claimant did not have a marked limitation in this domain for *any* twelve-month period, and mischaracterized evidence related to this domain. The Court disagrees on all counts.

### 1. The ALJ did not "play doctor" when finding that Claimant did not exhibit a marked impairment in interacting and relating with others.

On December 14, 2011, state agency consultants, Dr.Cagas, and SLP Lowry (the "Consultants"), found that Claimant had a marked limitation in interacting and relating with others. (R. 656). Lowry primarily based this finding on the October 3, 2011 report by Claimant's kindergarten teacher, who indicated that she could only understand Claimant fifty percent of the time when the topic of conversation was known to her and "very little" when it was not. (R. 184). Although the Consultants reviewed Claimant's file when Claimant was only three years old, there is no more recent medical opinion in the record as to Claimant's limitations in this domain.

The ALJ considered the Consultants' assessment regarding Claimant's interacting and relating with others but gave it no weight. (R. 901). According to the ALJ, "significant improvement in Claimant's speech since October 2011," indicated that Claimant was no longer

markedly limited in this domain and rendered the Consultants' assessment outdated. (*Id.*). The ALJ primarily relied on four pieces of evidence to support his finding of improvement: (1) the 2014 function report by Claimant's own mother, which indicated that Claimant had *no* limitations in his ability to talk or communicate, (R. 1139-40); (2) Claimant's 2014 IEP, which noted that Claimant's intelligibility had improved, (R. 1194-95); (3) the 2015 evaluation by Claimant's first grade teacher, which indicated that Claimant had *no* limitations in his ability to interact or relate with others, (R. 1161); and (4) the ALJ's personal observations of Claimant at the hearing, during which Claimant spoke intelligibly and "answered questions appropriately," (R. 900). The ALJ's decision to reject the Consultants' assessment on the ground that it was outdated and failed to account for this evidence was supported by substantial evidence. *See, e.g., Frank B. v. Saul*, No. 18 C 2099, 2019 WL 6307651, at *10 (N.D.Ill. Nov. 25, 2019) ("The ALJ's decision to discount a non-examining agency opinion rendered in the absence of th[e] full record was not merely reasonable; it was required.").

The ALJ further noted that Claimant's mother, Claimant, his IEPs, and his school records established that Claimant: (1) had no disciplinary problems at school; (2) enjoyed being around and liked to play with other children his age and was able to make friends; (3) showed affection towards his parents and other children; (4) generally got along with adults and school teachers; (5) consistently participated in class and group activities; and (6) was a very helpful, courteous, polite, and hard-working student. (R. 900-01). "In essence, [C]laimant [had] no behavioral problems." (R. 901). Notably, the Consultants' assessment of Claimant's ability to interact and relat with others did not address the status of Claimant's interpersonal relationships, but instead focused solely on Claimant's ability to communicate. (R. 656).

Claimant now argues that, as a layperson, the ALJ was not qualified to determine whether this evidence supported a finding that Claimant was not markedly limited in this domain. While the question of whether a claimant's condition medically equals a listed impairment is "strictly a medical determination," *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir.1999), "the rating of the functional domains is an *administrative* determination based on medical and nonmedical evidence . . . ," *Julius v. Colvin*, No. 15-cv-675-bbc, 2016 WL 5922318, at *5 (W.D.Wis. Oct. 11, 2016); *see* 20 C.F.R. §416.926a(n) ("For cases at the [ALJ] or Appeals Council level, the responsibility for deciding functional equivalence rests with the [ALJ] or Appeals Council."). Accordingly, the ALJ was qualified to consider the medical and nonmedical evidence in the record and make an administrative finding as to whether Claimant was markedly limited in his ability to interact or relate with others. *See Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) ("The [ALJ] is not required or indeed permitted to accept medical evidence if it is refuted by other evidence – which need not itself be medical in nature . . . ."); *Buckanon on behalf of J.H. v. Astrue*, No. 08-C-221, 2009 WL 10699462, at *5 (E.D.Wis. Jan. 8, 2009) ("[W]hile the ALJ is required to consider findings made by a medical consultant, the decision as to whether a plaintiff's impairments, or combination of impairments, result in a marked limitation is a legal question left to the ALJ to decide.").

## 2. The ALJ was not required to obtain an updated medical opinion regarding functional equivalence.

Claimant's next argument – that the ALJ "should have sought an updated opinion rather than weigh several years' worth of evidence himself," (Dckt. #21 at 10-11) – falls short for a similar reason. Although the regulations require that an ALJ must obtain an updated opinion from a medical expert before making a finding of disability based on *medical* equivalence, there is no such requirement for decisions of disability based on *functional* equivalence. *See* SSR 09-

1p, 2009 WL 396031, at *12 (Feb. 17, 2009).  Consequently, courts have consistently found that ALJs are not required to obtain updated medical expert opinions when considering whether a child's impairment functionally equals the listings – even in instances when the ALJ feels that evidence submitted after a consultant reviewed the file would have likely changed the consultant's findings.  *See Tyson v. Comm'r of Soc. Sec.*, No. 1:16-cv-130, 2017 WL 1130028, at *4-5 (W.D.Mich. Mar. 27, 2017); *Edwards ex rel. L.T. v. Colvin*, No. 12 C 7639, 2013 WL 3934228, at *4-5 (N.D.Ill. July 30, 2013); *A.H. ex rel. Williams v. Astrue*, No. 09 C 6981, 2011 WL 1935830, at *18–19 (N.D.Ill. May 18, 2011).

> **3.**     **The ALJ properly considered evidence of Claimant's improvement when finding that Claimant had no marked limitation in interacting and relating with others.**

When assessing a claimant's limitations, "[t]he key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled."  *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014).  Accordingly, "courts have rejected an ALJ's reliance on improvement alone as a substitute for analyzing the child's actual functioning."  *Edwards ex rel. L.T. v. Colvin*, No. 12 C 7639, 2013 WL 3934228, at *12 (N.D.Ill. July 30, 2013).  In this case, Claimant argues that even if the ALJ were qualified to discount Lowry's finding without seeking an updated medical opinion, he was not permitted to discount her opinion based on evidence of Claimant's improvement without considering "that improvement is a relative phenomenon."  (Dckt. #21 at 9).

Contrary to Claimant's assertion, however, the Court finds that the ALJ properly used evidence of Claimant's improvement to support his findings.  First, the ALJ did not simply note that Claimant had improved, but explained *how* that improvement supported a finding that Claimant was not markedly limited in interacting and relating with others.  *See Johnson v.*

15

*Colvin*, No. 15 C 9737, 2017 WL 219514, at *5 (N.D.Ill. Jan. 19, 2017) (finding that in order to

use improvement as a basis for discounting symptoms, "the ALJ must connect how [the]

improvement restored Plaintiff's ability to work"). For example, the ALJ noted – citing

Claimant's December 2014 IEP – that Claimant had "made good progress in the areas of speech

and language" in that his intelligibility had improved, his vocabulary had increased, and he could

understand sentences containing negatives, answer questions about pictures and stories, produce

sentences to describe pictures and events, and answer and ask questions. (R. 900 (citing R.

1194-98)).

The ALJ also avoided the mistake of comparing Claimant's current abilities only to those

of his past self, as opposed to those of other non-disabled children his own age. *Cf. Saracco ex*

*rel. T.H. Berryhill*, No. 15 C 6208, 2017 WL 6039916, at *6 (N.D.Ill. Dec. 6, 2017) ("[A] child

can improve under an IEP and still fall significantly behind non-disabled children her own

age."). Claimant suggests that certain 2014 IEP findings indicate that, despite his improvement,

he remained markedly limited when compared to other children. However, that IEP made no

explicit finding as to Claimant's limitations. Asking the Court to infer such a finding amounts to

a request to reweigh the evidence.[4] As it is, the ALJ's citation to the 2014 function report by

Claimant's mother, which indicated that Claimant had *no* limitations in his ability to talk or

communicate, (R. 1139-40), as well as the 2015 evaluation by Claimant's teacher, which also

---

[4] The Court also notes that an ALJ is not required to discuss every piece of evidence in the record, so long as he does not "ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). The findings highlighted by Claimant are not explicitly contrary to the ALJ's finding that Claimant experiences less than marked limitations in this domain. *See Tucker on behalf of D.R.N. v. Comm'r of Soc. Sec.*, No. 18-119-E, 2019 WL 2775505, at *1 n.1 (W.D.Penn. July 2, 2019) (finding an ALJ need not discuss findings that do not "opine specifically as to the limitations [Claimant] had in the six domains at issue"). Furthermore, the ALJ's acknowledgement of other potentially conflicting evidence from the 2014 and 2015 IEP reports assuages any concerns about impermissible cherry picking.

indicated that Claimant had *no* limitations in his ability to interact or relate with others, (R. 1161), was sufficient to support his finding that Claimant was less than markedly limited not only when compared to his prior self, but when compared to other children his own age.

> **4.      The ALJ adequately explained his finding that Claimant did not have a marked limitation in this domain for any twelve-month period.**

A claimant need not be disabled at the date of his hearing; rather, he qualifies for benefits if a disability existed for *any* consecutive twelve-month period during the relevant time frame. *See* 20 C.F.R. §404.320(b)(3); *Brown v. Massanari*, 167 F.Supp.2d 1015, 1017 (N.D.Ill.2001). Accordingly, an ALJ's failure to consider a claimant's limitations during the entire period between onset and the hearing justifies reversal. *See Calhoun v. Colvin*, 959 F.Supp.2d 1069, 1075 (N.D.Ill.2013) (remanding where it was "painfully apparent . . . that the ALJ focused entirely on the asserted absence of a disability as of the date of the Hearing, based in substantial part on extremely recent evidence").

Here, Claimant argues that the ALJ did not "sufficiently consider" whether he was markedly limited in interacting and relating with others for any twelve-month period between the alleged onset date and the date of the hearing. (Dckt. #21 at 11). In other words, Claimant suggests that the ALJ erred by failing to consider a closed period of disability. Claimant points to his October 2011 IEP testing, which found that he had only fifty percent intelligibility, as supporting a finding that – at least at that point in time – he had a marked limitation in this domain according to the Consultants' assessment. He then notes that the evidence the ALJ cited as demonstrating improvement "was from May 2014, over two and a half years after the October 2011 testing." (*Id.*). The inference Claimant would like to draw, then, is that he was markedly limited from October 2011 through May 2014.

17

There are two problems with Claimant's argument. First, the ALJ explicitly found that the Consultants' finding that Claimant had a marked limitation in his interacting and relating to others was not entitled to any weight. (R. 901). As stated above, this finding was supported by substantial evidence. *See* Section III(A)(1), *supra*. Since the ALJ did not find that Claimant had a marked limitation in his interacting and relating to others at *any* point during the relevant time period, he was not required to consider whether Claimant had such a marked limitation spanning a twelve-month period.

Second, Claimant's argument fails to account for the fact that the record lacks any evidence regarding Claimant's speech and language impairments between October 2011 and May 2014. Therefore, even though he had the burden to do so, Claimant cannot point to any evidence suggesting that his problems with speech and language persisted for at least twelve months during this period. *See Scheck*, 357 F.3d at 702 ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."). Considering this dearth of contrary evidence, it is enough that the ALJ explicitly acknowledged his duty to consider whether Claimant had a marked limitation for any twelve-month period relevant to the application, (R. 901), and considered evidence spanning the entire alleged disability period. *See Marko L. v. Saul*, No. 16 C 9723, 2021 WL 843427, at *4 (N.D.Ill. Mar. 5, 2021) ("Plaintiff does not cite any authority stating that the ALJ is required to do any more than the ALJ did here – consider medical evidence at all relevant times and determine whether Plaintiff was under a disability at any relevant time."); *Cf. Calhoun*, 959 F.Supp.2d at 1075 (remanding where the ALJ "focused entirely on the asserted absence of a disability as of the date of the Hearing, based in substantial part on extremely recent evidence").

5. **The ALJ's mischaracterizations of the record constitute harmless errors.**

Claimant suggests that the ALJ's mischaracterization of two pieces of evidence related to the interacting and relating with others domain requires reversal. The first relates to a function report completed by Claimant's mother on July 20, 2011. The ALJ noted that "Claimant was four months shy of three years of age when his mother completed the functional report" and it was, therefore, "reasonable that [C]laimant was unable to perform" some of the activities cited on a form meant for children ages three to six. (R. 899-900). In fact, Claimant was approximately three years and four months old at the time his mother completed the form. Claimant argues that this error requires reversal because the mistake prevented the ALJ from comparing Claimant's abilities to those of non-disabled children his own age. (Dckt. #21 at 8). The Court agrees that the ALJ made a mistake regarding Claimant's age, but finds that the error was harmless. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same.").

The function report prepared by Claimant's mother would not translate to a finding that Claimant had marked limitations in this domain even if Claimant were assessed as a three-year-old. As the ALJ noted, the report indicated that Claimant could take part in conversations with other children and ask for what he wants. (R. 159, 900). It also indicated that Claimant could speak clearly and was understood most of the time by people who knew him well, as well as people who did not. (R. 158, 899). These facts support a finding that Claimant, then a preschool-age child, did not have marked limitations in interacting and relating with others at the time the function report was completed. 20 C.F.R. §416.926a(i)(2)(iii) (a preschooler without an

19

impairment should be able to speak clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time); SSR 09-5P, 2009 WL 396026, at *6 (same).

The ALJ also misstated the record when he asserted that Claimant "no longer required speech therapy after October 2011." (R. 900). Indeed, an IEP report from October 2011 specifically recommended that Claimant receive speech and language services. (R. 687). However, this appears to be a mere scrivener's error, as the ALJ specifically cited the same report's therapy recommendations elsewhere in his analysis. (R. 899). Furthermore, this error was harmless. The ALJ explicitly acknowledged the fact that Claimant continued to have challenges in the area of speech and language which continued to impact his communications through December 2015. (R. 900). The ALJ also took Claimant's speech and language difficulties into account when finding that Claimant had a less than marked (as opposed to no) limitation in interacting and relating with others. (R. 899).

**B.      The ALJ properly considered Claimant's ability to move about and manipulate objects.**

The domain of moving about and manipulating objects relates to a child's gross and fine motor skills. 20 C.F.R. §416.926a(j). The ALJ considers how a child moves his body from one place to another and how a child moves and manipulates things. *Id.* In this case, the ALJ found that Claimant had a less than marked limitation in this domain. In support of this finding, the ALJ cited extensive records indicating that Claimant could engage in a wide range of physical activities. Most notably, he cited the findings of three state agency consultants who concluded that Claimant was not markedly limited in this area. (R. 903). Nonetheless, Claimant asserts that the ALJ's analysis of this domain was improper because he failed to adequately consider the ways in which Claimant was limited *while wearing his back brace,* which he had been directed to wear twenty-three hours per day. (R. 445).

20

Claimant correctly asserts that an ALJ must consider motor limitations caused by a child's impairments as well as those caused by "medications or other treatments."  SSR 09-6p, 2009 WL 396028, at *2.  Contrary to Claimant's assertion, however, the Court finds that the ALJ adequately assessed the impairments caused by Claimant's brace.  The ALJ noted that Claimant experienced "ongoing limitations" from the back brace, but cited a 2011 IEP report indicating Claimant found "ways to work around" it.  (R.903) (citing R. 691).  The ALJ also cited a 2013 physical therapy finding that, due to Claimant's "functional independence in accessing all areas of his educational environment," he no longer qualified for educationally relevant physical therapy.  (R. 902) (citing R. 1195).

Nonetheless, Claimant faults the ALJ for failing to consider his limitations while wearing his brace.  However, other than the 2011 IEP report referenced above and the testimony of Claimant and his mother (which the ALJ did not error by discounting, *see* Section III(C), *infra*), Claimant points to no evidence that limitations stemming from his brace exist.  When the ALJ asked Claimant's counsel to share medical findings regarding how Claimant is limited while wearing the brace, Claimant's counsel did not identify any such findings.  (R. 949-952).  The ALJ informed counsel that, without such evidence, it would be difficult for him to find that Claimant had a marked limitation in this domain.  (R. 949-951).  Notwithstanding the ALJ's admonition and the fact that the record was left open for one week following the hearing, (R. 972), counsel did not submit any additional evidence regarding Claimant's limitations while wearing the back brace.

C.     **The ALJ's evaluation of the subjective complaints of Claimant and Claimant's mother was not patently wrong.**

Claimant finally argues that the ALJ's decision to discount the subjective complaints of Claimant and his mother was improper.  (Dckt. #21 at 14).  The Court finds otherwise.  An

21

ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012). To be patently wrong, the decision must lack "any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). Claimant bears the burden of demonstrating that the ALJ's subjective symptom evaluation met this standard. *See Horr v. Berryhill*, 743 Fed.Appx. 16, 20 (7th Cir. 2018).

Here, the ALJ discounted the allegations of Claimant's mother in part based on the inconsistency of her testimony with the record. At the August 12, 2016 hearing, Claimant's mother testified that Claimant had not been wearing his brace for six months. (R. 958). But as the ALJ observed, a January 21, 2016 treatment note indicated that Claimant had not been wearing his brace for at least eight months longer than his mother testified. (R. 1612).

Claimant argues that the ALJ's subjective symptoms assessment was insufficient because he "did not explore this degree of inconsistency further." (Dckt. #21 at 14) (citing *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[W]ithout some attempt by the ALJ to explore the supposed contradictions here, they do not provide a sound basis for concluding that [the claimant's] report was inaccurate.")). *Beardsley* is distinguishable, however, because the ALJ in this case *did* inquire further as to the reason for this inconsistency.

During the testimony of Claimant's mother, the ALJ noted that the difference between her testimony and the January 2016 treatment note was "pretty significant," and asked Claimant's counsel to explain how this lengthy lack of compliance with treatment was consistent with the degree of limitation alleged. (R. 960). Claimant's counsel offered no explanation as to the inconsistent testimony. (R. 961). The ALJ then reiterated his concern, stating, "the mother of the claimant gives me testimony, which seems to be directly inconsistent with what I . . . see in the record, I'm trying to figure out, again, how do I rely on that?" (R. 962). Claimant's

22

counsel again failed to address the inconsistency. Because the ALJ gave Claimant's counsel multiple opportunities to explore this contradiction and because counsel failed to provide any explanation, the ALJ did not error by discounting the testimony of Claimant's mother. Indeed, courts have upheld subjective symptom evaluations based on more "minor discrepancies." *See, e.g., Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding an ALJ's subjective symptom evaluation where the ALJ discounted the credibility of a claimant who "initially reported that she did some cooking but at the hearing testified that she did no household chores"); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (holding that the hearing officer's evaluation of mildly inconsistent testimony, coupled with his observations of the claimant at trial, was sufficient to avoid remand under the "patently wrong" standard).

Claimant also argues that the ALJ misrepresented the testimony of Claimant's mother by "implying that she had not bothered to send an order for a new brace to her insurance company until the day before the hearing." (Dckt. #21 at 14). Indeed, when assessing Claimant's mother's testimony, the ALJ wrote that "[a]lthough [Claimant's mother] observed that his curve is getting worse it was not until the day before the hearing that she eventually sen[t] orders to the insurance for a brace." (R. 894). Claimant notes that his mother explained to the ALJ that she had sent an order to her insurance provider for a new brace earlier, but had been informed that she needed a "letter of necessity" from Claimant's doctor. She testified that, due to the doctor's lengthy waitlist, she had been unable to secure the letter until the day before the hearing. (R. 958-59). Claimant also points to a 2016 doctor's note, which indicated that Claimant had lost his insurance and, therefore, had not visited the orthopedic or neurosurgery clinics for a year. (R. 1611).

23

The Court agrees that the ALJ should have elaborated on these reasons for delayed treatment if he intended to use the delay when discounting the testimony of Claimant and his mother. *See Craft*, 539 F.3d at 679 (finding inability to afford treatment may be considered a good reason for non-compliance); SSR 82-59 *2 (S.S.A.), 1982 WL 31384 ("[A]ppropriate development must be made to resolve whether the claimant . . . is justifiably failing to undergo the treatment prescribed.").  This error, however, does not require remand because the ALJ gave multiple valid reasons for discounting the credibility of Claimant and his mother.  *See* (Dckt. #23 at 9-10) (citing to the ALJ's decision (R. 893-906) and listing multiple reasons); *Halsell v. Astrue*, 357 Fed.Appx. 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons [for discounting symptom allegations] must be valid as long as *enough* of them are.") (emphasis in original); *McKinzey*, 641 F.3d at 890-91 (finding that the ALJ's credibility determination was not patently wrong even though it "was not without fault" because two of the three reasons for discounting claimant's credibility were invalid where the third reason was valid); *Woodsum v. Astrue*, 711 F.Supp.2d 1239, 1262 (W.D.Wash. 2010) ("merely because one reason the ALJ gave for discounting [plaintiff's and Claimant's] credibility was not proper does not render the ALJ's credibility determination invalid, as long as it is supported by substantial evidence.").

## <u>CONCLUSION</u>

For the foregoing reasons, Claimant's motion for summary remand, (Dckt. #21), is denied and the Commissioner's motion for summary judgment, (Dckt. #22), is granted.  The decision of the ALJ is affirmed.

**ENTERED:   September 19, 2022**

_____

**Jeffrey I. Cummings
United States Magistrate Judge**